FILED
COURT OF APPEALS
DIVISION II

2013 SEP 24 AM 9: 26

STATE OF WASHINGTON

BY____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br>                    Respondent,<br><br>          v.<br><br>ROBERT THOMAS DRISCOLL,<br>                    Appellant. | No. 42849-1-II<br><br>UNPUBLISHED OPINION |

FORBES, J.P.T.[1] — Robert T. Driscoll appeals his jury convictions for first degree unlawful firearm possession and unlawful possession of a controlled substance with intent to deliver. Driscoll argues that (1) his trial counsel was ineffective, (2) the State's evidence was insufficient to support his convictions, (3) the trial court violated his right to a public trial when it held an in-chambers conference regarding jury instructions, and (4) substantial evidence does not support the trial court's legal financial obligations (LFOs) imposed at sentencing. In his statement of additional grounds for review (SAG),[2] Driscoll asserts that (1) the trial court abused its discretion when it denied his continuance motion and (2) the prosecutor committed misconduct when he questioned a witness about the witness's arrest warrant. We hold that (1) Driscoll's trial counsel's alleged

---

[1] Judge Jennifer Forbes is serving as judge pro tempore of the Court of Appeals, Division II, under CAR 21(c).

[2] RAP 10.10.

deficiencies did not fall below an objective standard of reasonableness and did not prejudice him, (2) there is sufficient evidence that Driscoll constructively possessed the methamphetamine and the gun, (3) the in-chambers conference to discuss jury instructions did not violate Driscoll's public trial right, (4) Driscoll's challenge to his LFOs is not ripe, and (5) Driscoll's SAG arguments have no merit. We affirm Driscoll's convictions.

## FACTS

In February 2011, Driscoll was arrested by his Washington State Department of Corrections (DOC) Officer Dan Cochran after Cochran discovered a gun and methamphetamine under the hood of a car associated with Driscoll. Before Driscoll's arrest, Cochran received information that Driscoll may have violated his drug offender sentencing alternative conditions and on February 3, Cochran went to Driscoll's home to obtain a sample for a urinalysis. Driscoll could not comply with Cochran's request at the time, so Cochran told Driscoll to report to the DOC office later that day to provide a sample. Driscoll did not comply with Cochran's request. Cochran then obtained his supervisor's permission to arrest Driscoll and to search his person and his vehicle for drugs. Four days later, when Driscoll arrived at the DOC office with his girlfriend, Danielle Neill,[3] Cochran and three other DOC officers arrested Driscoll.

The DOC officers searched the car, which was a white Honda Accord with doors that opened upwards. Cochran found multiple blue lights, called "Kojak light[s]," that can be secured to a vehicle's roof. Report of Proceedings (RP) at 28. He also found handcuffs and multiple car keys. Cochran was concerned because the Kojak lights and handcuffs "would

---

[3] Danielle Neill is at times in the record referred to as Danielle Frost, her married name. We refer to her here as Neill for consistency.

2

indicate somebody imitating police and taking people into custody, and the keys are the kinds of things that people who would be trying to break into cars or to steal cars might have in their vehicles." RP at 31. Another officer found a black bag containing a gun, several baggies of suspected methamphetamine, empty plastic baggies, two glass pipes, and an electronic scale bearing Driscoll's thumb print.

The DOC officers contacted the Olympia Police Department, and one of the responding officers discovered that the Washington State Department of Licensing (DOL) record showed Driscoll as the registered owner of a white 1999 Honda Accord with the same vehicle registration number as the car in the DOC parking lot. After receiving his Miranda[4] rights, Driscoll denied knowledge of the contraband. While the officers questioned Driscoll, Cochran opened Driscoll's wallet—seized after his arrest—and discovered $323 in cash.

The State charged Driscoll with first degree unlawful firearm possession under RCW 9.41.040(1)(a) for having a prior conviction for a serious offense, namely, a 2001 conviction for unlawful delivery of a controlled substance to a person under the age of 18.[5] The State also charged Driscoll with unlawful possession of a controlled substance with intent to deliver under RCW 69.50.401.[6]

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] A person is guilty of first degree unlawful firearm possession "if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted . . . of any serious offense as defined in this chapter." RCW 9.41.040(1)(a). Driscoll's unlawful delivery of a controlled substance conviction was a "serious offense." Former RCW 9.41.010(16)(b) (2009); RCW 69.50.401, 406(1).

[6] RCW 69.50.401(1) provides that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." Methamphetamine is a controlled substance. RCW 69.50.206(d)(2).

3

Before trial, Driscoll moved for a continuance to interview two additional witnesses, Corey Ballard and Laura Forsberg. He also requested more time to obtain certified title transfer documents showing that Driscoll had transferred the 1999 Honda Accord to Neill before his arrest. The trial court denied the motion.

At trial, Driscoll and the State stipulated to the admission of the judgment and sentence for Driscoll's convictions on two counts of unlawful delivery of a controlled substance to a person under age 18. The judgment and sentence showed Driscoll's criminal history including a 1998 conviction for unlawful possession of a controlled substance (methamphetamine), two 1992 second degree theft convictions, and a 1991 second degree theft conviction. At trial, the State questioned Driscoll about his criminal history, and under jury instruction number 6, the jury was permitted to consider his criminal history for purposes of credibility. Defense counsel did not object to this questioning or to the jury instruction.

At trial, Driscoll claimed that he did not own the car when he was arrested because he had transferred it to Neill on February 1. He claimed that DOL records showed that it was registered to him because Neill did not file the title transfer documents until March (after his arrest). Driscoll unsuccessfully moved under ER 1003 to enter duplicate copies of the title transfer documents instead of certified copies.

The trial testimony conflicted as to the ownership of the car and who was driving it on the day of Driscoll's arrest. Juanita Peabody, Neill's friend, testified that on February 7 Neill showed Peabody her new car, a 1999 Honda Accord with doors that opened vertically. Neill and Driscoll testified that Neill left Peabody's house in the car and gave Driscoll a ride to the DOC office. Neill explained that someone left the drugs in her car, she put them in the bag with the gun, hid them under the hood, and that Driscoll did not know they were there.

4

But the State presented evidence that Driscoll was the car's owner. Cochran testified that he had encountered Driscoll driving the car on multiple occasions. Matt Frank, a community corrections officer, testified that he saw Driscoll arrive at the DOC office in the car on the day Driscoll was arrested and that Driscoll exited and reentered the car on the driver's side. Frank also testified that he listened to a recorded jail telephone call in which Driscoll told a woman that his alibi was that he had been dropped off at the DOC office by someone else and that he was neither a driver nor a passenger in the white Honda that day.

Driscoll also disputed his ownership of the gun. Corey Ballard, Neill's friend, testified that he sold the gun to Neill, but that there was no sale documentation. Neill told Ballard she was buying the gun for Driscoll, but Neill later denied this.

On the second trial day, the trial court released the jury and asked counsel to meet in chambers to discuss jury instructions. Before the in-chambers meeting, the trial court stated in open court that the parties were going to discuss the instruction governing the use of prior convictions. In particular, the court noted that the standard instruction said that the prior convictions could be used only for impeachment, but that here, another purpose would be to prove a prerequisite element of a charged offense.

The jury found Driscoll guilty on both charges and the trial court sentenced him to 102 months' confinement. The trial court ordered that Driscoll pay a total of $2,000 in fees and LFOs. It also found that Driscoll "ha[d] the ability or likely future ability to pay the [LFOs] imposed herein." Clerk's Papers (CP) at 42. Driscoll did not object to this finding. Driscoll appeals his convictions and the trial court's finding that he had the current or future ability to pay LFOs.

No. 42849-1-II

ANALYSIS

I.      INEFFECTIVE ASSISTANCE OF COUNSEL

A.  Standard of Review

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show that defense counsel's objectively deficient performance prejudiced him. *State v. McFarland*, 127 Wn.2d 322, 334–35, 899 P.2d 1251 (1995). Performance is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *McFarland*, 127 Wn.2d at 334–35. Prejudice results if the outcome of the trial would have been different had defense counsel not rendered deficient performance. *McFarland*, 127 Wn.2d at 337.

We give great deference to trial counsel's performance and begin our analysis with a strong presumption that counsel was effective. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *McFarland*, 127 Wn.2d at 335. A claim that trial counsel was ineffective does not survive if trial counsel's conduct can be characterized as legitimate trial strategy or tactics. *State v. Hendrickson*, 129 Wn.2d 61, 77–78, 917 P.2d 563 (1996), *overruled on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). To rebut the strong presumption that counsel's performance was effective, "the defendant bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (emphasis omitted) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

"The decision of when or whether to object is a classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). Thus, we presume "that the failure to

6

object was the product of legitimate trial strategy or tactics, and the onus is on the defendant to rebut this presumption." *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *Madison*, 53 Wn. App. at 763. To establish that counsel's failure to object to evidence constituted ineffective assistance, Driscoll must show that (1) counsel's failure to object fell below prevailing professional norms, (2) the trial court would have sustained the objection if counsel actually had made it, and (3) the result of the trial would have differed if the trial court had excluded the evidence. *State v. Sexsmith*, 138 Wn. App. 497, 509, 157 P.3d 901 (2007).

B. Admission of Driscoll's Criminal History

Driscoll argues that his counsel was ineffective because he failed to object to the entry of his judgment and sentence showing his criminal history instead of stipulating to the serious offense for purposes of RCW 9.41.040(1)(a) and for failing to object when the State elicited testimony regarding Driscoll's criminal history.

To prove the charge of first degree unlawful firearm possession, the State was required to show that Driscoll had previously been convicted of a "serious offense." RCW 9.41.040(1)(a). To satisfy the "serious offense" element, the State and Driscoll stipulated to the admission of the judgment and sentence for Driscoll's 2001 convictions on two counts of unlawful delivery of a controlled substance. The judgment and sentence also showed that Driscoll had been convicted of unlawful possession of methamphetamine in 1998 and second degree theft on three different

occasions between 1991 and 1992.[7]

On cross-examination, Driscoll testified regarding the contents of the judgments and sentences. He testified, "I have three theft seconds when I was a juvenile in Alabama because I stole my dad's grill and his camera. I have a simple possession in 1998, I have the delivery in 2001, and I have a possession of firearm in 2008." RP at 199-200. The State also referenced these convictions to ask Driscoll whether he had a "drug problem," to which Driscoll responded, "Off and on, yes." RP at 201. Finally, the trial court's jury instruction number 6 provided, "You may consider evidence that the defendant has been convicted of a crime only in deciding what weight or credibility to give to the defendant's testimony, or for determining if a prerequisite element of a charged crime has been proved, and for no other purpose." CP at 23-24. Counsel did not object to the State's questions regarding Driscoll's criminal history or to the jury instruction.

Driscoll argues the judgment and sentence prejudiced him because he could have stipulated that he had committed a prior offense instead of allowing the jury to see the judgment and sentence, itself. But there was a conceivable tactical reason to allow the jury to see the type of crime for which Driscoll was convicted instead of merely a stipulation that he had committed a serious offense. Had the crime not been specified, the jury could have speculated that the prior conviction was for a violent offense, which could have been more prejudicial than the actual drug offense here.

---

[7] Driscoll also stipulated to the admission of his judgment and sentence for the 1998 unlawful possession of methamphetamine conviction, which showed additional criminal history of two second degree theft convictions from 1995 and 1993. However, his ineffective assistance argument is based solely on the admission of his judgment and sentence for the unlawful delivery to a minor convictions. Accordingly, we address only that stipulation here.

Driscoll further argues that even if his trial counsel properly stipulated to the prior offense for the purposes of the unlawful firearm possession statute, there was no legitimate tactical reason to stipulate to the admission of the three other prior convictions because they were unnecessary to prove any element of the charged crimes. But the jury heard evidence that Driscoll was under DOC's authority when he was arrested. Thus, instead of allowing jury speculation as to the age and extent of Driscoll's criminal history, Driscoll's trial counsel may have sought to introduce the entire judgment and sentence and to allow the State to question him about it so that Driscoll could appear honest and forthright to the jury. Additionally, by allowing this history to come in, the jury could see that the offenses were all more than 10 years old, which could have provided support to Driscoll's argument that he had put the behavior behind him.

Driscoll nevertheless contends that there was no conceivable legitimate tactical reason to stipulate to the prior convictions because they were more than 10 years old and, thus, were inadmissible under ER 609(b). Under ER 609(b), the unlawful possession conviction and the three theft convictions would only have been admissible if "the court determine[d], in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweigh[ed] its prejudicial effect." Thus, it is possible that if the State had sought to introduce these convictions and had Driscoll's trial counsel objected, the objection would have been sustained. But this was not a situation in which the State introduced Driscoll's criminal history and Driscoll's trial counsel failed to object. Rather, Driscoll's counsel stipulated to the admission of the judgment and sentence, demonstrating that doing so was an affirmative tactical decision. Furthermore, as discussed above, Driscoll's trial counsel

may have had a reasonable tactical reason for allowing the judgment and sentence into evidence. Driscoll's claim fails.

C. Failure To Object to Hearsay Statement

Driscoll also argues that his counsel was ineffective for failing to object to hearsay testimony. We disagree.

Driscoll contends that his trial counsel should have objected to the following testimony by Cochran explaining his reason for investigating Driscoll for drug-related activity:

> I had received a phone call from an employee here at the . . . Thurston County Jail, and [the jail] had informed me that they were listening to the [offenders'] phone calls. . . . And they had overheard a conversation with . . . Driscoll who was on the outside talking to an offender who was locked up at the time, and they let me know that they had heard a conversation where they were referring to . . . Driscoll several times . . . participating in drug activity.

RP at 20-21.

Driscoll argues that the testimony was "inherently prejudicial" because it improperly allowed the jury to consider the drug-related testimony as propensity evidence. Br. of Appellant at 24. Although Driscoll argues that this statement was hearsay, the record shows that it was offered to explain the basis for the probable cause for Cochran's investigation of Driscoll's activities and not the truth of the matter asserted. *See* ER 803(a)(3). Accordingly, Driscoll has failed to show that had his counsel objected to the statement, the objection likely would have been sustained. *Davis*, 152 Wn.2d at 714. Moreover, Driscoll mentioned his drug use multiple times during trial, and Driscoll has failed to show how the additional reference to his involvement with drugs would have changed the outcome of the trial. *McFarland*, 127 Wn.2d at 337. Additionally, trial counsel may have chosen to refrain from objecting to the testimony in

order to avoid drawing additional attention to it; thus, the failure to object could have been a legitimate trial strategy or tactic. *Grier*, 171 Wn.2d at 42. Driscoll's claim fails.

D. Statement of Additional Grounds for Review

In his SAG, Driscoll makes two additional arguments in support of his ineffective assistance of counsel claim. First, he argues that his counsel was ineffective for "fail[ing] to object to the trial court not allowing into evidence the title and bill of sale [for the 1999 Honda Accord]." SAG at 8. But defense counsel moved to admit duplicates of the title transfer documents at trial, making extensive arguments as to their admissibility. Thus, defense counsel effectively preserved a claim that the documents should have been admitted for our review, and, while a claim for ineffective assistance of counsel can be made alleging trial counsel's failure to make a particular motion, no such claim can be made where, as here, trial counsel merely made an unsuccessful motion. Driscoll has failed to show how his trial counsel's performance fell below an objective standard of reasonableness, and his claim fails.[8]

Second, Driscoll argues that his counsel was ineffective for failing to object to Cochran's testimony regarding the handcuffs, car keys, and Kojak lights. But Driscoll fails to cite a likely successful ground for such objection. Moreover, defense counsel could have reasonably decided not to object to avoid calling unnecessary attention to the evidence. *See, e.g., State v. Gladden*,

---

[8] But even if we were to review the substance of the trial court's decision to exclude the copies of the title transfer documents, a decision to which Driscoll has not assigned error, the trial court did not abuse its discretion when it denied Driscoll's motion to admit them. Driscoll sought to admit the documents as duplicates under ER 1003, which provides, "A duplicate is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original." RP at 123. In response to Driscoll's motion to admit the duplicates, the State pointed out that a different pen had been used to write the February 1 transfer date on the documents, and the trial court noted that the documents were not self-authenticating such that the date could be verified. Accordingly, the trial court did not abuse its discretion when it declined to admit the duplicate title transfer documents under ER 1003.

116 Wn. App. 561, 568, 66 P.3d 1095 (2003) (failure to object to witness's unsolicited remark could be described as legitimate trial tactic to avoid drawing attention to information defense counsel sought to exclude). Because no viable basis for the objection appears and because the failure to object to the testimony could have been a legitimate trial tactic, Driscoll's claim fails.

II.    SUFFICIENCY OF THE EVIDENCE

Driscoll next argues that insufficient evidence supports his convictions because the State failed to prove that he possessed either the gun or the methamphetamine. We disagree.

Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415–16, 824 P.2d 533 (1992).

Both of the crimes for which Driscoll was convicted required the State to prove beyond a reasonable doubt that he possessed the items in question—a gun and methamphetamine. RCW 9.41.040(1)(a); RCW 69.50.401. Driscoll challenges the sufficiency of the State's evidence on the "possession" element of both of these crimes. Br. of Appellant at 9.

Possession may be actual or constructive. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994). "A defendant has actual possession when he or she has physical custody of the item and constructive possession if he or she has dominion and control over the item. Dominion and

control means that the object may be reduced to actual possession immediately." *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002) (internal citation omitted). "This control need not be exclusive, but the State must show more than mere proximity." *State v. Raleigh*, 157 Wn. App. 728, 737, 238 P.3d 1211 (2010), *review denied*, 170 Wn.2d 1029 (2011). We "look at the totality of the situation to determine if there is substantial evidence tending to establish circumstances from which the jury can reasonably infer that the defendant had dominion and control of the [contraband items] and thus was in constructive possession of them." *State v. Partin*, 88 Wn.2d 899, 906, 567 P.2d 1136 (1977) (emphasis omitted), *overruled on other grounds by State v. Lyons*, 174 Wn.2d 354, 365, 275 P.3d 314 (2012). Constructive possession may be proved by circumstantial evidence. *State v. Sanders*, 7 Wn. App. 891, 893, 503 P.2d 467 (1972).

Having dominion and control over premises where contraband is found raises a rebuttable inference of dominion and control over contraband inside the premises. *State v. Cantabrana*, 83 Wn. App. 204, 208, 921 P.2d 572 (1996). But dominion and control over the premises alone is not a crime in and of itself; rather, it is only one factor to be considered in determining whether the defendant constructively possessed the contraband. *Cantabrana*, 83 Wn. App. at 208. A vehicle can be considered a "'premises'" over which a defendant can exercise dominion and control for the purposes of constructive possession. *State v. Mathews*, 4 Wn. App. 653, 656, 484 P.2d 942 (1971).

Because the State concedes that Driscoll was not in actual possession of the gun and the methamphetamine at the time of his arrest, we focus on constructive possession. We have held that there was sufficient evidence to submit the question of constructive possession of a gun to the jury where there was evidence that the defendant owned the vehicle and knowingly

13

transported the gun. *State v. Turner*, 103 Wn. App. 515, 524, 13 P.3d 234 (2000); *State v. McFarland*, 73 Wn. App. 57, 70, 867 P.2d 660 (1994), *aff'd*, *State v. McFarland*, 127 Wn.2d 322; *State v. Reid*, 40 Wn. App. 319, 326, 698 P.2d 588 (1985). And we have held that there was sufficient evidence of constructive possession of a gun and drugs where the defendant was the owner of the vehicle or had the keys to the vehicle and was the vehicle's driver and sole occupant. *State v. Bowen*, 157 Wn. App. 821, 828, 239 P.3d 1114 (2010); *State v. Potts*, 1 Wn. App. 614, 617, 464 P.2d 742 (1969). But because the control need not be exclusive, it is not necessary that the person be the sole occupant in order to prove constructive possession. *See Raleigh*, 157 Wn. App. at 731, 737. Thus, we have also held that sufficient evidence supported the jury's finding of constructive possession of a gun when there were two occupants of a vehicle in which the gun was found but the defendant was the vehicle's owner and knew the gun was in the vehicle. *Turner*, 103 Wn. App. at 521-22.

Viewed in the light most favorable to the State, the record establishes that Driscoll was the car's owner and driver on the date the contraband was discovered inside it; and further that he had dominion and control over it. The DOL record showed Driscoll's name on the registration of a white 1999 Honda Accord that had the same vehicle registration number as the car in the DOC parking lot. Cochran testified that he recognized the car because he had encountered Driscoll driving it on multiple occasions. He also testified that when Driscoll first purchased the car, Cochran took photographs of the car and Driscoll gave him a copy of the registration. Cochran said that he would look for the car when he drove by Driscoll's home because "if it was there, he would be there" and that the vehicle was at Driscoll's house when Cochran contacted him there on February 3. And a community corrections officer testified that he saw Driscoll exit the car on the driver's side when he arrived at the DOC office and that he

14

entered on the driver's side when he returned to the car to smoke a cigarette. RP (11/16/11) at 57-59. Finally, the bag containing the gun and methamphetamine also contained a scale bearing Driscoll's thumb print.

This was sufficient evidence from which a jury could reasonably infer that Driscoll had dominion and control over the car and that he constructively possessed the gun and the methamphetamine. Although Driscoll presented evidence that he was neither the car's owner nor driver, we do not make credibility determinations or weigh evidence. *Walton*, 64 Wn. App. at 415–16. And although Driscoll argues that he did not know the items were under the hood of the car, a reasonable jury could have inferred that he knew the items were there. While the items were not in plain view and could not be easily reached from the driver's seat, they were in a car owned and driven by Driscoll over a period of time, and the jury could have reasonably found that he could have accessed them easily when the car was parked. *See State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997) (gun's location under driver's seat within plain sight and within the defendant's reach raises inference that he knew it was there). In addition, the evidence of Driscoll's thumb print on the scale demonstrates that Driscoll had, in the past, had access to the property in the bag. Accordingly, we hold that there was sufficient evidence from which a reasonable jury could have inferred that he constructively possessed the gun and the methamphetamine.[9]

---

[9] In his SAG, Driscoll raises duplicative sufficiency of the evidence arguments, and we decline to address them separately.

III.    PUBLIC TRIAL RIGHT

Driscoll next argues that the in-chambers jury instruction discussion between counsel and the trial court violated his right to an open and public trial under the state and federal constitutions.  We disagree.

During trial, the trial court requested an in-chambers conference with counsel:

> I would like to talk with counsel for a few minutes in chambers about the jury instructions. . . . And I'll talk with counsel . . . as we look at jury instructions. No longer need an instruction about the defendant choosing not to testify so the issue would be what we tell a jury about considering prior convictions.  There would be two purposes: One purpose would be for impeachment.  That's the standard jury instruction.  The other purpose would be as a prerequisite element of a charged offense, and that is the prior conviction for delivery to a person under the age of 18.

RP at 212-13.  After a brief discussion about an unrelated matter, the trial court stated, "We'll be in recess and I'll see counsel in chambers."  RP at 215.  The record does not indicate that Driscoll was a part of the in-chambers meeting.

Driscoll argues that this conference violated his constitutional right to a public trial. The Sixth Amendment to the federal constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to a public trial.  *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005).  The issue of whether a defendant's right to a public trial has been violated is a question of law that we review de novo. *Brightman*, 155 Wn.2d at 514.

Before determining whether a public trial right violation occurred, we must first consider "whether the proceeding at issue implicates the public trial right, thereby constituting a closure at all." *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012).  In *Sublett*, our Supreme Court, applying the "experience and logic" test, held that an in-chambers conference to discuss a jury question seeking clarification of a jury instruction did not implicate the right to a public trial.

16

176 Wn.2d at 75-77. The court reasoned, "Because the jury asked a question concerning the instructions, we view this as similar in nature to proceedings regarding jury instructions in general. Historically, such proceedings have not necessarily been conducted in an open courtroom." *Sublett*, 176 Wn.2d at 75.

*Sublett* resolves Driscoll's challenge to the in-chambers conference to discuss the jury instructions here because such conferences fail the experience prong of the *Sublett* test and do not constitute a "closure" for the purposes of a public trial right analysis. 176 Wn.2d at 77. Accordingly, we hold that the trial court's in-chambers conference to discuss jury instructions did not violate Driscoll's or the public's right to a public trial.

IV.  LEGAL FINANCIAL OBLIGATIONS

Driscoll next argues that substantial evidence does not support the trial court's finding that he had the current or future ability to pay LFOs. Because a trial court is prohibited from imposing LFOs only when the record shows that there is no likelihood that the defendant's indigency will end and because there is no evidence in the record that Driscoll will be unable to pay LFOs in the future, we hold that the trial court's finding was not clearly erroneous.

A trial court may not order a defendant to repay court costs unless the defendant "is or will be able to pay them." RCW 10.01.160(3). RCW 10.01.160(3) further provides, "In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."

Although neither RCW 10.01.160(3) nor the constitution requires the trial court to enter formal, specific findings about a defendant's ability to pay LFOs, if the trial court makes such an unnecessary finding, we review it under the clearly erroneous standard. *State v. Lundy*, No.

17

42886-5, 2013 WL 4104978, at *3 (Wash. Ct. App. Aug. 13, 2013). "'A finding of fact is clearly erroneous when, although there is some evidence to support it, review of all of the evidence leads to a definite and firm conviction that a mistake has been committed.'" *Lundy*, 2013 WL 4104978, at *3 (internal quotation marks omitted) (quoting *Schryvers v. Coulee Cmty. Hosp.*, 138 Wn. App. 648, 654, 158 P.3d 113 (2007)).

As a preliminary matter, we note that Driscoll does not distinguish between mandatory LFOs, for which the trial court need not consider the defendant's ability to pay, and discretionary LFOs, which are subject to the requirements of RCW 10.01.160(3). *See Lundy*, 2013 WL 4104978, at *2. A $500 victim assessment is required by RCW 7.68.035, irrespective of the defendant's ability to pay. *State v. Curry*, 62 Wn. App. 676, 681, 814 P.2d 1252 (1991), *aff'd*, 118 Wn.2d 911, 829 P.2d 166 (1992). A $100 deoxyribonucleic acid collection fee is required by RCW 43.43.7541, also irrespective of the defendant's ability to pay. *State v. Thompson*, 153 Wn. App. 325, 336, 223 P.3d 1165 (2009). A $200 criminal filing fee is required by RCW 36.18.020(2)(h). *Lundy*, 2013 WL 4104978, at *2. And a $100 crime lab fee is required by RCW 43.43.690(1). "Because the legislature has mandated imposition of these legal financial obligations, the trial court's 'finding' of a defendant's current or likely future ability to pay them is surplusage." *Lundy*, 2013 WL 4104978, at *2. Accordingly, the requirement that a trial court consider the defendant's current or future ability to pay only applies to discretionary LFOs. *Lundy*, 2013 WL 4104978, at *3.

The only non-mandatory fees at issue here were the $1,000 drug enforcement fund of Thurston County fee and the $100 Thurston County drug court fee, which are LFOs that the trial court may impose under RCW 9.94A.760. Therefore, we review the trial court's finding on Driscoll's ability to pay only as it relates to these discretionary LFOs.

18

Driscoll assigns error to the trial court's finding number 2.5 on his judgment and sentence:

> The court has considered the total amount owing, the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein. RCW 9.94A.753.

CP at 42. He argues that substantial evidence does not support this finding because the trial court failed to first consider Driscoll's financial resources, relying on our decision in *State v. Bertrand*, 165 Wn. App. 393, 404, 267 P.3d 511 (2011), *review denied*, 175 Wn.2d 1014 (2012).

In *Bertrand*, we held that in order to uphold such a finding on appeal, the record must be "sufficient for us to review whether 'the trial court judge took into account the financial resources of the defendant and the nature of the burden' imposed by LFOs." 165 Wn. App. at 404 (quoting *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116, 837 P.2d 646 (1991)).

But in *Bertrand*, the defendant had disabilities that may have reduced or possibly eliminated her future ability to pay LFOs and the trial court ordered the defendant to pay the LFOs within 60 days of the judgment and sentence while still incarcerated. 165 Wn. App. at 404 n.15. Here, the record does not show that there was an issue of Driscoll's ability to pay, that any alleged inability to pay would continue indefinitely, or that the trial court ordered Driscoll to pay the LFOs shortly after sentencing while still incarcerated. Accordingly, we hold that the trial court's finding that Driscoll had the current or future ability to pay LFOs was not clearly

erroneous. [10] *See Lundy*, 2013 WL 4104978, at *4 ("Although the trial court at sentencing did not specifically address Lundy's future ability to pay [LFOs,] there is nothing in the record suggesting that Lundy's indigency (if present) would extend indefinitely. Because a showing of indigence is Lundy's burden, the record suggests that Lundy will have the ability to pay these fees in the future.").

## V. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

### A. Motion for Continuance

Driscoll first argues that the trial court abused its discretion when it denied his motion for a continuance. We disagree.

We review a trial court's ruling on a continuance motion for an abuse of discretion. *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). A trial court abuses its discretion if its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons. *Downing*, 151 Wn.2d at 272. "In exercising discretion to grant or deny a continuance, trial courts may consider many factors, including surprise, diligence, redundancy, due process, materiality, and maintenance of orderly procedure." *Downing*, 151 Wn.2d at 273.

---

[10] Although Driscoll challenges the trial court's finding that he had the current or future ability to pay LFOs, he does not challenge the trial court's decision to impose them. Generally, "challenges to orders establishing legal financial sentencing conditions that do not limit a defendant's liberty are not ripe for review until the State attempts to curtail a defendant's liberty by enforcing them." *Lundy*, 2013 WL 4104978, at *4 (emphasis omitted). *See also Bertrand*, 165 Wn. App. at 405 ("'[T]he meaningful time to examine the defendant's ability to pay is when the government seeks to collect the obligation.'" (emphasis omitted) (quoting *Baldwin*, 63 Wn. App. at 310)). Because the State has not yet attempted to collect Driscoll's LFOs, any challenge to the trial court's imposition of the LFOs at this time would not be ripe. *Lundy*, 2013 WL 4104978, at *4. But because a party can challenge a finding of fact at any time, Driscoll's challenge to the trial court's finding here is properly before us. *Lundy*, 2013 WL 4104978, at *3 n.6.

Driscoll moved for a continuance because Neill had provided contact information for two additional witnesses, Ballard and Forsberg, only a week before trial and defense counsel had not yet interviewed them. Defense counsel informed the trial court that the witnesses would testify regarding the ownership of the gun. He also requested a continuance to obtain the Honda's official title transfer documents. The trial court denied the motion.

Driscoll argues that he was prejudiced by defense counsel's inability to more thoroughly interview the witnesses and that he was deprived of the opportunity to introduce exculpatory evidence because the trial court prevented him from introducing certified copies of the title transfer documents. But Driscoll fails to explain how he was prejudiced by any alleged inability to prepare with respect to witnesses Ballard and Forsberg. Ballard testified at trial regarding the gun, and Driscoll has failed to show how Forsberg's testimony would have been more than duplicative of Ballard's or to otherwise allege what the content of her testimony would have been. And Driscoll's contention that the certified copies of the title transfer documents were "exculpatory" is incorrect. Although Neill's ownership of the Honda at the time of Driscoll's arrest would have been evidence favorable to Driscoll's case, Driscoll was nevertheless the driver of the car on the date he was arrested, which could have led a reasonable jury to conclude that the car was within his dominion and control at the time of arrest. We hold that the trial court did not abuse its discretion when it denied Driscoll's motion for a continuance.

B. Prosecutorial Misconduct

Finally, Driscoll argues that the prosecuting attorney committed misconduct on cross-examination of Neill when he suggested that she had a warrant for her arrest when no such warrant existed. We disagree.

A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). Because Driscoll did not object to the prosecutor's allegedly improper conduct at trial, we must ascertain whether the prosecutor's misconduct was "so flagrant and ill-intentioned" that it caused an "enduring and resulting prejudice" incurable by a jury instruction. *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997). Under this heightened standard of review, Driscoll has the burden to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

During the State's cross-examination of Neill, the following exchange took place:

| | |
|---|---|
| [STATE:]. | Isn't it true that you have a warrant out for your arrest right now? |
| [NEILL:] | No, it's not. |
| [STATE:] | It's not? |
| [NEILL:] | No. |
| [STATE:] | Okay. |

RP at 153. Driscoll argues that the prosecutor's question regarding the warrant amounted to reversible error because Neill denied the existence of the warrant. But Driscoll has failed to show that the prosecutor was incorrect in his assertion that there was a warrant for Neill's arrest at that time and, thus, he has failed to show that a curative instruction would even have been appropriate. Moreover, the suggestion that there was a warrant for Neill's arrest, even if inaccurate, was not so prejudicial that a curative instruction would not have obviated the

No. 42849-1-II

prejudicial effect on the jury. Accordingly, Driscoll's prosecutorial misconduct claim fails, and we affirm Driscoll's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

FORBES, J.P.T.

I concur:

QUINN-BRINTNALL, J.

23

No. 42849-1-II

JOHANSON, A.C.J. (concurring) — I concur with the majority opinion but write separately regarding Driscoll's legal financial obligation (LFO) challenge because I would follow our analysis in *State v. Blazina*, 174 Wn. App. 906, 301 P.3d 492 (2013), *petition for review filed*, No. 89028-5 (Wash. July 8, 2013). I would decline to reach the merits of the LFO issue because Driscoll did not object when the trial court found that he had a present or future ability to pay the LFOs. Accordingly, I would hold that Driscoll did not properly preserve the issue for appellate review. RAP 2.5(a).

Johanson, A.C.J.

24